*In re* ERNESTO RODRÍGUEZ APONTE, querellado.

Número 92.
*Sometido:* 8 de abril de 1957. *Resuelto:* 17 de abril de 1957.

*Francisco Coll Moya,* abogado del querellado; *Noel Colón Mar-
tínez, Fiscal Especial* y *César Bobonis Díaz, Fiscal Auxiliar,*
abogados de El Pueblo.

PER CURIAM: Por instrucciones de este Tribunal el Fiscal
radicó querella de desaforo contra el abogado Ernesto Rodrí-
guez Aponte. El Juez Carlos Santana Becerra fué designado
por el Tribunal con fecha 14 de mayo de 1956 para actuar de
*Master* en este caso. Los cargos imputados al querellado son
los siguientes:

### "PRIMER CARGO

"Que allá en o alrededor del mes de octubre de 1954 y en San
Juan, Puerto Rico el referido abogado-notario Ernesto Rodríguez
Aponte, a sabiendas, maliciosa y fraudulentamente falsificó y
alteró un papel, documento o instrumento de los conocidos como
*Orden de Excarcelación*—que estaba ya suscrito por el Hon. Juez
Cayetano Coll Pujols—borrando el nombre del acusado, la fecha
de expedición del documento y el nombre del delito, y escribiendo
en su lugar el nombre de otro acusado: Nicolás Cádiz Benítez;
otra fecha: 18 de octubre de 1954 y otro delito: Hurto Menor;
todo ello con el propósito fraudulento e ilegal de presentar, como
en efecto presentó al Alcaide de la Cárcel Municipal de San Juan
la referida orden de excarcelación como si fuera una genuina y
verdadera y de obtener, como en efecto obtuvo el referido abo-

gado-notario Ernesto Rodríguez Aponte, la libertad ilegal del individuo Nicolás Cádiz Benítez quien se encontraba entonces detenido en la Cárcel Municipal de San Juan.

## "SEGUNDO CARGO

"Que allá en o alrededor del mes de noviembre de 1954 y en San Juan, Puerto Rico el referido abogado-notario Ernesto Rodríguez Aponte, a sabiendas, maliciosa y fraudulentamente falsificó y alteró un papel, documento o instrumento de los conocidos como *Orden de Excarcelación*—que estaba ya suscrito por el Hon. Juez Cayetano Coll Pujols—borrando el nombre del acusado, la fecha de expedición del documento y el nombre del delito, y escribiendo en su lugar el nombre de otro acusado: Santos Torres; otra fecha; 9 de noviembre de 1954 y otros delitos: Portar Armas y Alterar la Paz; todo ello con el propósito fraudulento e ilegal de presentar, como en efecto presentó al Alcaide de la Cárcel Municipal de San Juan la referida orden de excarcelación como si fuera una genuina y verdadera y de obtener, como en efecto obtuvo el referido abogado-notario Ernesto Rodríguez Aponte, la libertad ilegal del individuo Santos Torres quien se encontraba entonces detenido en la Cárcel Municipal de San Juan.

## "TERCER CARGO

"Que allá en o alrededor del mes de noviembre de 1954 y en San Juan, Puerto Rico el referido abogado-notario Ernesto Rodríguez Aponte, a sabiendas, maliciosa y fraudulentamente falsificó y alteró un papel, documento o instrumento de los conocidos como *Orden de Excarcelación*—que estaba ya suscrito por el Hon. Juez, Cayetano Coll Pujols—borrando el nombre del acusado, la fecha de expedición del documento y el nombre del delito, y escribiendo en su lugar el nombre de otro acusado: Antonio Avilés Santiago; otra fecha: 9 de noviembre de 1954 y otro delito: Exposiciones Deshonestas; todo ello con el propósito fraudulento e ilegal de presentar, como en efecto presentó al Alcaide de la Cárcel Municipal de San Juan la referida orden de excarcelación como si fuera una genuina y verdadera y de obtener, como en efecto obtuvo el referido abogado-notario Ernesto Rodríguez Aponte, la libertad ilegal del individuo Antonio Avilés Santiago quien se encontraba entonces detenido en la Cárcel Municipal de San Juan.

## "CUARTO CARGO

"Que allá en o alrededor del mes de enero de 1955 y en San Juan, Puerto Rico el referido abogado-notario Ernesto Rodríguez Aponte, a sabiendas, maliciosa y fraudulentamente falsificó y alteró un papel, documento o instrumento de los conocidos como *Orden de Excarcelación*—que estaba ya suscrito por el Hon. Juez, Cayetano Coll Pujols—borrando el nombre del acusado, la fecha de expedición del documento y el nombre del delito, y escribiendo en su lugar el nombre de otro acusado: Inocencio Vélez Domingo; otra fecha: 1ro. de enero de 1955 y otros delitos: Acometimiento y Agresión Grave y Alterar la Paz; todo ello con el propósito fraudulento e ilegal de presentar, como en efecto presentó al Alcaide de la Cárcel Municipal de San Juan la referida orden de excarcelación como si fuera una genuina y verdadera y de obtener, como en efecto obtuvo el referido abogado-notario Ernesto Rodríguez Aponte, la libertad ilegal del individuo Inocencio Vélez Domingo quien se encontraba entonces detenido en la Cárcel Municipal de San Juan.

## "QUINTO CARGO

"Que allá en o alrededor del mes de enero de 1955 y en San Juan, Puerto Rico el referido abogado-notario Ernesto Rodrí-guez Aponte, a sabiendas, maliciosa y fraudulentamente falsificó y alteró un papel, documento o instrumento de los conocidos como *Orden de Excarcelación*—que estaba ya suscrito por el Hon. Juez Cayetano Coll Pujols—borrando el nombre del acusado, la fecha de expedición del documento y el nombre del delito, y escribiendo en su lugar el nombre de otro acusado: Ramón L. Brenes Mentries; otra fecha: 1ro. de enero de 1955 y otro delito: Infracción al artículo 17-A de la Ley 279; todo ello con el propósito fraudulento e ilegal de presentar, como en efecto presentó al Alcaide de la Cárcel Municipal de San Juan la referida orden de excarcelación como si fuera una genuina y verdadera y de obtener, como en efecto obtuvo el referido abogado-notario Ernesto Rodríguez Aponte, la libertad ilegal del individuo Ramón L. Brenes Mentries quien se encontraba entonces detenido en la Cárcel Municipal de San Juan."

Celebradas varias vistas y presentada evidencia oral y documental, el Master rindió su informe al Tribunal llegando a las siguientes conclusiones de hecho:

## "CARGO 1

"1(*a*) La orden de excarcelación que se usó para sacar en libertad bajo fianza a Nicolás Cádiz Benítez el 18 de octubre de 1954, por el delito de hurto menor (Exh. 5) fué una orden borrada que se había expedido antes a favor de Pedro Ortiz en 17 de octubre de 1954, por infracción al Artículo 7-A de la Ley de Automóviles. El querellado escribió el nombre de Nicolás Cádiz Benítez y el delito, Hurto Menor.

"(*b*) La orden de excarcelación que se usó para excarcelar bajo fianza a Pedro Ortiz (Exh. 11) el 17 de octubre de 1954 por el Artículo 7-A, Ley 279, fué una orden borrada que se había expedido antes a favor de Pablo Hernández el 17 de octubre de 1954, por Ordenanza Municipal. El querellado escribió la orden de excarcelación de Pedro Ortiz.

"(*c*) La orden de excarcelación que se usó para libertar a Pablo Hernández (Exh. 18) el 17 de octubre de 1954, por Ordenanza Municipal, fué una orden borrada o lavada antes. El querellado escribió el nombre de Pablo Hernández y el delito, Ord. Mpl. El resto fué escrito por Ángel Luis Alonso, un empleado del querellado.

## "CARGO 2

"2(*a*) La orden de excarcelación que se usó para sacar bajo fianza a Santos Torres el 9 de noviembre de 1954 por portar armas y alteración de la paz (Exh. 1) fué una orden borrada que se había expedido antes a favor de Emiliano Orellana, el 5 de noviembre de 1954, por acometimiento y agresión grave. El querellado escribió el nombre de Santos Torres, el delito y más adelante, donde dice 'Santos Torres prest. fianza'. Lo otro se escribió por el empleado de éste, Luis Alonso.

"(*b*) La orden de excarcelación utilizada para sacar en libertad provisional a Emiliano Orellana el 5 de noviembre de 1954 por acometimiento y agresión y alterar la paz (Exh. 10) fué una orden borrada que antes se había expedido a favor de Ángel Rivera, el 4 de noviembre de 1954. El querellado escribió el nombre del acusado, Emiliano Orellana Morales, y el delito.

"(*c*) La orden de excarcelación que se utilizó para sacar en libertad bajo fianza a Ángel Rivera, el 4 de noviembre de 1954 por la Ley 279 (dos casos) (Exh. 16) fué una orden borrada que había sido antes expedida a favor de Luis Vargas Hernández por portar armas y acometimiento y agresión grave, el 2 de noviembre de 1954. El querellado escribió el nombre del acusado,

Ángel Luis Rivera Santiago, el delito, y más adelante 'Antel Luis Rivera prestado fianza'.

"(d) La orden de excarcelación que se utilizó para libertar a Luis Vargas Hernández el 2 de noviembre de 1954 por portar armas y acometimiento y agresión grave (Exh. 17) fué una orden borrada, expedida antes a favor de Esteban Vega, el 31 de octubre de 1954, por alteración de la paz. En esta orden no escribió el querellado, y parte está escrita por su empleado Luis Alonso.

"(e) La orden de excarcelación usada para libertar a Esteban Vega, conjuntamente con Juan Pagán, también fué borrada y antes se expidió a favor de Manuel Rodríguez, y la de Juan Pagán a favor de Guillermo Benvenutti.

"CARGO 3

"3 (a) La orden de excarcelación usada para obtener la libertad bajo fianza de Antonio Avilés Santiago, de 9 de noviembre de 1954, por el delito de exposiciones deshonestas (Exh. 3) fué una orden borrada que se había expedido anteriormente a favor de Socorro Isaac, en 6 de noviembre de 1954 por acometimiento y agresión simple. El querellado escribió la orden de excarcelación de Avilés Santiago, excepto donde dice Sala de 'Río Piedras'.

"(b) La orden de excarcelación que se usó para libertar a Socorro Isaac en 6 de noviembre de 1954 por acometimiento y agresión simple (Exh. 9) fué una orden borrada y expedida antes a favor de Joaquín Lozada, el 4 de noviembre de 1954 por alterar la paz. No hay prueba de quién escribió la orden de excarcelación de Isaac.

"(c) La orden de excarcelación utilizada para excarcelar a Joaquín Lozada, en 4 de noviembre de 1954, por alterar la paz y ordenanza municipal (Exh. 12) fué una orden borrada, expedida antes a favor de Benancio Caraballo, en 3 de noviembre de 1954 por alterar la paz. El nombre del acusado, Joaquín Lozada Álvarez, pareció a la testigo ser escrito por el querellado, pero no lo aseguró.

"(d) La orden de excarcelación que se usó para libertar a Benancio Caraballo, de 3 de noviembre de 1954, por alterar la paz, (Exh. 13) fué una orden borrada expedida antes a favor de Luciano Fuentes, el 1 de noviembre de 1954, por daños maliciosos. La orden a favor de Caraballo fué escrita por el querellado, excepto donde dice Sala de 'R. P.'

"(e) La orden de excarcelación utilizada para excarcelar a Luciano Fuentes en 1ro. de noviembre de 1954, por daños maliciosos (Exh. 14) fué una orden borrada, expedida antes a favor de Enrique Viera, el 31 de octubre de 1954 por alterar la paz. En esta orden el querellado escribió el nombre del acusado—Luciano Fuentes—el delito y donde dice 'prestado fianza'.

"(f) Una orden de excarcelación expedida conjuntamente a favor de Hoodrow Santiago y cuatro co-acusados más en 30 de octubre de 1954, por alterar la paz, fué una orden borrada y lavada antes.

## "CARGO 4

"4(a) La orden de excarcelación utilizada para libertar a Inocencio Vélez Domingo en 1ro. de enero de 1955, por portar armas, acometimiento y agresión grave y alterar la paz, (Exh. 2) fué una orden borrada expedida antes a favor de Bonifacio Marrero en 11 de noviembre de 1954, por ordenanza municipal. El querellado escribió la totalidad de la orden de Vélez Domingo.

"(b) La orden de excarcelación utilizada para libertar a Bonifacio Marrero el 11 de noviembre de 1954, por ordenanza municipal (Exh. 7) fué una orden borrada que antes se lavó. El querellado escribió en esta orden el nombre de Bonifacio Marrero, el delito, donde dice 'Mpl-Capital' y luego otra vez 'Bonifacio Marrero'.

## "CARGO 5

"5(a) La orden de excarcelación utilizada para excarcelar mediante fianza a Ramón L. Brenes Mentries en 1 de enero de 1955 por infracción al Artículo 17-A de la Ley 279 (Exh. 4), fué una orden borrada expedida antes a favor de Marcial González Figueroa en 23 de diciembre de 1954, por ordenanza municipal, alterar la paz y portar armas. La orden de excarcelación a favor de Mentries fué escrita toda por el querellado.

"(b) La orden de excarcelación usada para libertar a Marcial González Figueroa en 23 de diciembre de 1954, por ordenanza municipal, portar armas y alterar la paz y no registro de armas, (Exh. 8) fué una orden borrada que fué antes objeto de lavado. En esta orden el querellado escribió el nombre del acusado, Marcial González Figueroa, los delitos, de nuevo 'Marcial González prest. fianza'. El resto fué escrito por su empleado Alonso.

"6. No hubo prueba directa en ninguno de los cargos específicamente formulados, ni en los casos bajo los apartados 1(a) y

($b$); 2($b$), ($c$), ($d$) y ($e$); 3($b$), ($c$), ($d$), ($e$) y ($f$); 4($b$) y 5($b$) en cuanto a si al momento de borrarse esas órdenes de excarcelación y escribirse de nuevo para otros acusados, otros delitos y otras fechas, las órdenes estaban ya firmadas (según se imputa) o no por el juez.

"7. Todas las órdenes de excarcelación aquí envueltas fueron borradas, lavadas con líquido de borrar tinta, en la oficina del querellado y en su casa, por él, sus familiares y empleados, y fueron llenadas de nuevo total o parcialmente por el querellado, o por sus empleados a solicitud del querellado. Aparecen 319 órdenes de excarcelación borradas.

"8. El querellado seguía la práctica de preparar para un mismo acusado varias órdenes de excarcelación—tres o cuatro— y las enviaba al juez con distintas personas. También en el caso de varios co-acusados conjuntamente por un mismo delito obtenía órdenes de excarcelación colectivamente, e individual o separadamente. Las órdenes adicionales que no se utilizaban para libertar a un detenido eran entregadas por los empleados a la esposa del querellado quien guardaba las mismas hasta ser usadas de nuevo. La orden de excarcelación usadas para un acusado no volvía, ni podía volver a manos del querellado porque la misma quedaba en poder, y bajo la custodia, del Alcaide de la Cárcel.

"9. El querellado tenía en su poder una orden de excarcelación ya firmada por el juez aparentemente en blanco. Al ser fotografiada dicha orden con rayos ultravioleta quedó demostrado que la misma había sido lavada y en ella hubo antes el nombre de un acusado, un delito y una fecha. (*Exh. 81*).

"10. La prueba pericial demostró la existencia de 12 órdenes de excarcelación [ninguna de ellas corresponde a los cargos específicamente formulados] en donde el lavado o borrado alteró parcialmente la firma del Juez Coll Pujols. Esto, y el Exh. 81, además de la prueba oral a tal efecto, hace concluir que el querellado borraba órdenes ya firmadas por el magistrado.

"11. El querellado tenía la práctica de personarse a diario en la Cárcel Municipal de la Parada 8 por lo regular temprano en la mañana, días laborables y días feriados. Allí se entrevistaba con un número de detenidos, tomaba del Alcaide los datos y el delito de cada uno y luego llegaban en relativo corto tiempo—una hora en promedio—órdenes de excarcelación en grupo para las personas que el querellado entrevistaba, traídas por sus empleados, y hasta por familiares.

"12. Por las gestiones de excarcelar provisionalmente bajo fianza el querellado cobraba dinero, unas veces unido al hecho de asumir la defensa del caso, y otras veces por la excarcelación en sí.

"13. En cuanto al hecho de si las cinco órdenes de excarcelación objeto de los cinco cargos específicamente formulados estaban ya firmadas por el juez al alterarse las mismas, sólo hay prueba circunstancial. (2) (Para la teoría ahora aplicable en cuanto a prueba circunstancial: *Pueblo* v. *Bonilla,* 78 D.P.R. 152.) Los demás hechos relativos a los referidos cargos específicos se demostraron con prueba directa."

Notificadas las partes con copia del Informe del *Master*, éstas han radicado sendos escritos informando al Tribunal no tener objeciones que hacer a sus conclusiones de hecho.

Las conclusiones de hecho del Master están ampliamente sostenidas por la evidencia en autos. Los cargos imputados y probados contra el querellado son graves en extremo. Por consiguiente, *se dictará resolución separándolo del ejercicio de la profesión de abogado-notario en esta Isla.*

El Juez Asociado Sr. Marrero no intervino.